WARREN KIMBERLY ET AL. *v.* THE NEW HAVEN BANK N. B. A., TRUSTEE (ESTATE OF MARTHA K. LINES), ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 5—decided December 4, 1956

*Nicholas B. Eddy,* for the plaintiffs.

*Charles M. Lyman,* with whom was *James J. Corrigan,* for the defendant The New Haven Bank N. B. A., administrator c.t.a. of the estate of Mabel S. Lloyd.

*Curtiss K. Thompson,* pro se as guardian ad litem, with whom was *Joseph J. Mager.*

*Thomas F. Wall,* with whom, on the brief, was *Robert A. Wall,* for the defendant Ruth A. Surdam.

*I. Gordon Colby, Jr.,* appeared for the named defendant but did not argue the cause.

DALY, J. The plaintiffs appealed to the Superior Court from an order and decree of the Probate Court for the district of New Haven ascertaining the distributees of a trust created under the will of Martha K. Lines. All of the parties requested the Superior Court to reserve the case for the advice of this court upon a stipulated set of facts. The interests of all the direct and collateral descendants of the testatrix that are known to any of the parties are represented.

These material facts are stipulated: The testatrix died on October 29, 1902, at the age of eighty-two years, leaving a will dated January 16, 1902. The pertinent portions of the will are printed in the footnote.[1] The testatrix' father and mother, William and

[1] "2. I give, devise and bequeath to my grand-daughter, Mabel S. Lloyd, my homestead, Number 144 Olive Street, New Haven, Connecticut, together with the outbuildings and land connected therewith, and all furniture and beds, bedding and clothing of which I may die possessed, to her and her heirs and assigns absolutely in fee simple and forever, with the request that said homestead and land be never sold or alienated from the Augustus Lines blood while there is a lineal descendant of my late husband, Augustus Lines, living who can hold it.

"3. All the rest, residue and remainder of my estate, whether real, personal or mixed I give, devise and bequeath to Leonard Bostwick, of the City of New Haven, to be held by him in trust for the uses and purposes hereinafter expressed:

"1. He shall hold and manage said trust estate, collect all income therefrom, and pay all legal charges and expenses thereof. And he shall retain and invest the net income of said estate until my grand-daughter, Mabel S. Lloyd shall have arrived at the age of twenty-five years.

"2. If the personal needs of my brother, George D. Kimberly, require it, said trustee shall in his discretion pay from the net income

Ruth A. N. Kimberly, had died before 1902. In 1896, the testatrix had finished and caused to be printed a genealogical chart of the Kimberly family. She had compiled the data on the last four generations over a period of several years. Her husband, Augustus Lines, from whom she had inherited substantially all of the property she owned at the time of her death, had died in 1887. Her two children had predeceased her. One of them had married James H. Rowland, the father of Mabel S. Lloyd and Stuart L. Rowland. The only issue of the testatrix who

of said trust estate to said George D. Kimberly for his personal use during his natural life such sums not exceeding twenty-five ($25) dollars per month as he shall judge the personal needs of my said brother require.

"3. When my said grand-daughter, Mabel S. Lloyd, shall have arrived at the age of twenty-five years, then I direct said trustee to pay over to her, semi-annually or quarterly, as he deems best, the income thereafter accruing from said trust estate, until the personal needs of my grandson, Stuart L. Rowland, shall require assistance from my estate.

"4. When the personal needs of my said grandson, Stuart L. Rowland, require it, that is when his own estate is exhausted, and not before, then I direct my said trustee to pay over, semi-annually, to the person or persons who shall have charge of the person and affairs of my said grandson, so much and no more of the income of said trust estate as he, my said trustee, and the Judge of the Probate Court having cognizance of the settlement of my estate, shall, in their discretion, judge necessary for the comfortable care, maintenance and support of my said grandson during the full time of his natural life, and the balance of the income of said trust estate, not required for the needs of my said grandson, shall be paid over to my grand-daughter, Mabel S. Lloyd, if living, but if not living, then to her issue, or to such person or persons as she may in and by her last will direct.

"5. Upon the death of the last of my said grandchildren, said trust shall cease, and said trust estate shall be divided among the issue or the issue of issue of the body of either of my two grandchildren, if any should be living, said issue or issue of issue to take per stirpes and not per capita.

"6. If there should be none of the issue or issue of issue of my said grandchildren living at the death of the last of my said grandchildren, then I give said trust estate to my legal heirs."

survived her were these two grandchildren, who were
the two life tenants named in her will. The testatrix
had eleven brothers and sisters, eight of whom pre-
deceased her. Five of those eight died without issue.
Harriet N. K. Bostwick, Eliza K. Morehouse and
William H. Kimberly, the other three of the eight sis-
ters and brothers of the testatrix who died before
her, left children who were living at her death. The
testatrix' brothers Gilead, James and George sur-
vived her and left descendants. George was a con-
tingent beneficiary of part of the income of the resid-
uary trust created by the will. These three brothers
died before the trust terminated on June 2, 1953, the
date of death of Mabel S. Lloyd. Stuart L. Rowland,
who was born on August 19, 1878, died unmarried on
November 10, 1934. His sister, Mabel S. Lloyd, was
his sole heir at law. He left no estate. Mabel, who
was born on August 20, 1879, left no surviving issue.
Her husband survived her.

Leonard Bostwick, who was named executor and
trustee in the will, is now deceased and The New
Haven Bank N. B. A. is the duly qualified and acting
successor trustee. The amount of the trust when it
was originally turned over to the trustee in 1903 was
$31,888.19. After the death of the last surviving life
tenant, the successor trustee filed an account show-
ing a balance of $72,366.53 on hand, subject to pay-
ment of the remaining administration expenses, and
asked for an order of distribution. The Probate
Court found that the remaindermen, beneficiaries
and distributees of the trust estate are the following
heirs at law of the testatrix: Gilead Kimberly,
James Kimberly and George D. Kimberly, brothers
of the testatrix; Mary R. K. Baldwin, Harriet Kim-
berly, Hattie K. Del Fosse and Frank W. Kimberly,
nieces and nephew of the testatrix, being the children

of a deceased brother, William H. Kimberly; Leonard Bostwick and Harriet B. Patten, nephew and niece of the testatrix, being the children of a deceased sister, Harriet N. K. Bostwick; and Mary L. M. Lines, a niece of the testatrix, being the daughter of a deceased sister, Eliza K. Morehouse. Distribution was ordered to be made to these persons or to the estates of any of them who are deceased.

The court reserved for our advice the question stated below.[2] The plaintiffs are grandchildren of James Kimberly, a brother of the testatrix who survived her. He died on September 2, 1917, leaving a son, James W. Kimberly, and a daughter, Ruth A. Surdam. By his will all of his property was given to his daughter, and nothing was left to his son, who died in 1918 and was the father of the plaintiffs. The plaintiffs claim that the testatrix intended, by her use of the words "my legal heirs" in paragraph 6 of her will, to have take as remaindermen those persons determined to be her heirs at the termination of the last life interest, that of Mabel S. Lloyd, on June 2, 1953. The administrator c.t.a. on the estate of Mabel S. Lloyd contends that the intention of the testatrix was that the trust estate should go to the estates of Stuart L. Rowland and Mabel S. Lloyd. Other parties claim that the trust estate should be distributed, as ordered by the Probate Court, to the

---

[2] "Which one of the following three alternatives correctly designates those persons the testatrix, Martha [K.] Lines, intended to have take as remaindermen by her use of the words 'my legal heirs,' in Paragraph 6 of her will:

"(a) The grandchildren of Martha K. Lines who survived her, to wit Mabel S. Lloyd and Stuart L. Rowland;

"(b) The heirs of Martha K. Lines determined at the termination of the last life interest, that of Mabel S. Lloyd on June 2, 1953;

"(c) The heirs of Martha K. Lines determined at the date of her death on October 29, 1902 excluding, however, her two grandchildren above named."

heirs of the testatrix as determined at the date of her death, excluding, however, her grandchildren Stuart L. Rowland and Mabel S. Lloyd.

The cardinal rule to be followed in construing the will of the testatrix is to find and effectuate her intent, as disclosed by what she said in the will. *Howard* v. *Batchelder,* 143 Conn. 328, 335, 122 A.2d 307. In seeking that intent, the court looks first to the will itself. It examines the words and the language used in the light of the circumstances under which they were written. It studies the will as an entirety. The quest is to determine the meaning of what the testatrix said and not to speculate upon what she meant to say. *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246; *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643.

The will of the testatrix was executed on January 16, 1902. By it she gave her homestead and furniture to her granddaughter, Mabel S. Lloyd. The residue of her estate she gave in trust for the benefit of, and during the lifetime of, her two grandchildren, Mabel S. Lloyd and Stuart L. Rowland, subject to payments, not exceeding $25 a month, to be made from the net income to her brother, George D. Kimberly, during his life, if in the discretion of the trustee his "personal needs" should require such payments. Then followed these provisions: "5. Upon the death of the last of my said grandchildren, said trust shall cease, and said trust estate shall be divided among the issue or the issue of issue of the body of either of my two grandchildren, if any should be living, said issue or issue of issue to take per stirpes and not per capita. 6. If there should be none of the issue or issue of issue of my said grandchildren living at the death of the last of my said grandchil-

dren, then I give said trust estate to my legal heirs."

"It is a well settled rule of construction that a legacy given to a person or a class, to be paid or divided at a future time, takes effect in point of right on the death of the testator. In such case the contingency attaches, not to the substance of the gift, but to the time of payment. And where words are equivocal, leaving it in doubt whether the words of contingency or condition apply to the gift itself or the time of payment, courts are inclined to construe them as applying to the time of payment, and to hold the gift as vested rather than contingent." *Dale* v. *White,* 33 Conn. 294, 296; *Bridgeport-City Trust Co.* v. *Lister,* 140 Conn. 147, 152, 98 A.2d 811; *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 276, 161 A. 341. In *Close* v. *Benham,* 97 Conn. 102, 104, 115 A. 626, we said: "We have adopted this rule in the belief that it leads to the early vesting of estates, and will carry out the probable intent of the testator, where the will indicates no contrary intent." In the instant case the will indicates no contrary intent. The decisive words, "then I give said trust to my legal heirs," in paragraph 6, are written in the present tense. The word "then," as it is used, is to be construed as the equivalent of "in such a case" or "in that event." *First National Bank* v. *Somers,* 106 Conn. 267, 275, 137 A. 737.

If the determination of the "legal heirs" of the testatrix should be made as of the date of the termination of the last life estate, it might be made under a statute of distributions which would take effect many years after the death of the testatrix. She made her will about ten months before her death at the age of eighty-two. The two life tenants were then twenty-two and twenty-three years of age. We cannot assume that the testatrix intended the dis-

tribution to be to such persons as might be named in a statute of distributions which might be in force at the death of the last of her grandchildren, who were almost sixty years her junior. On the contrary, we regard it as obvious that the beneficiaries she had in mind were those who were then living. She knew who her beneficiaries were at the time she made her will. She could not know who they would be at some later date. We cannot assume that she would be willing to leave the determination of the objects of her bounty to some statute to be passed in the unknown future. *Bridgeport City Trust Co.* v. *Shaw,* supra, 278.

The administrator c.t.a. on the estate of Mabel S. Lloyd contends that there is no clear and decisive showing that the testatrix intended to exclude the life tenants. "Wherever a life use is given, with remainder over to his issue, and, failing such, to the testator's children, heirs or next of kin, or other class, we think it must be presumed that the testator intended to exclude the life tenant from this class, unless a contrary intent is manifest in the language of the will." *Close* v. *Benham,* 97 Conn. 102, 109, 115 A. 626; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 161, 158 A. 224. "The reason for this rule is that, when a testator has given a beneficiary a limited interest, such as a life estate, in a fund, prima facie it would appear that he did not intend to give that same beneficiary an added interest in the same fund." *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 555, 107 A.2d 409.

The language of the will discloses the plain purpose of the testatrix to exclude her grandchildren, the life tenants. In paragraphs 5 and 6 she clearly stated that, upon the death of the last of her grandchildren, the trust should cease and be divided

among the issue of her grandchildren and that if there should be no such issue the trust estate should go to her "legal heirs." Both grandchildren died without issue. The testatrix is presumed to have known that the effect of a gift of the trust estate to her grandchildren would be to make it transmissible either by will or descent. Had it been her purpose to have her grandchildren's heirs, legal or testamentary, have the trust estate, the natural way to have accomplished it would have been to provide that if her grandchildren died without issue it should go, upon the death of the last of them, to their heirs or to such persons as they should appoint. Instead of this, the testatrix directed that, upon the death of the last of the grandchildren, if neither one of them left issue, the estate should go to her legal heirs. Her clear intention is shown by the language of the will. *Union & New Haven Trust Co.* v. *Ackerman,* supra, 159; *Close* v. *Benham,* supra; *Nicoll* v. *Irby,* 83 Conn. 530, 535, 77 A. 957.

No intent contrary to the one that the testatrix intended to exclude her grandchildren is manifest in the language of the will. Moreover, the language used by her clearly and decisively shows that she intended to eliminate her grandchildren, who, otherwise, as her legal heirs would have been the distributees, and that she intended to have the trust estate go to those who would be determined to be the distributees under the statute providing for the distribution of an intestate estate when there are no children of the deceased or representatives of them. The heirs of Martha K. Lines as determined at the date of her death on October 29, 1902, excluding, however, her two grandchildren, Mabel S. Lloyd and Stuart L. Rowland, are the persons the testatrix intended to have take as remaindermen by her

use of the words "my legal heirs" in paragraph 6 of her will.

Our answer to the question reserved for our advice is that alternative (c) correctly designates those persons the testatrix intended to have take as remaindermen by her use of the words "my legal heirs" in paragraph 6 of her will.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.